IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Gina M. Kennedy,

    Plaintiff,

  v.                            Case No. 2:18-cv-649

Commissioner of
Social Security,

    Defendant.

## OPINION AND ORDER

Plaintiff Gina M. Kennedy brings this action under 42 U.S.C. §§ 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income. Benefits were initially denied by an administrative law judge ("ALJ") in a decision issued on February 22, 2013. Plaintiff appealed the decision to this court, *see Kennedy v. Comm'r of Soc. Sec.*, 2:14-cv-419 (S.D. Ohio), and the case was remanded to the Commissioner for further consideration of the opinion of the plaintiff's treating physician, Charles Kratz, M.D. The Appeals Counsel remanded the case to a different ALJ, who held a hearing on July 10, 2015. In a decision rendered on December 2, 2015, the ALJ found that plaintiff has severe impairments consisting of obesity, residuals of right ankle surgery, obstructive sleep apnea, depressive disorder, anxiety disorder, personality disorder, and borderline intellectual functioning. PAGEID 856. Only the mental impairments are at issue in this case. The ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work. The ALJ specified additional restrictions limiting plaintiff to performing simple, repetitive tasks involving low stress with no

strict production quotas or fast pace and only routine work with few changes in the work setting, with no contact with the public as part of her job duties and only occasional contact with coworkers and supervisors, and no tasks involving teamwork or requiring close, over-the-shoulder, supervision. PAGEID 871. Relying on the testimony of a vocational expert, the ALJ concluded that there are jobs which plaintiff can perform and that plaintiff is not disabled. PAGEID 878-79.

This matter is before the court for consideration of plaintiff's July 15, 2019, objections to the July 1, 2019, report and recommendation of the magistrate judge, recommending that the decision of the Commissioner be affirmed.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive."). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] ... presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(internal citation omitted). A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). However, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Plaintiff's Objections

Plaintiff objects to the conclusion of the magistrate judge that the ALJ's decision was supported by substantial evidence. In an unusually thorough decision, the ALJ discussed the evidence in the record and explained the weight given to each of the medical sources. She also evaluated Dr. Kratz's opinion in the context of the entire record, recognizing that the expert opinions ranged from plaintiff having slight or mild impairments to having extreme functional limitations. PAGEID 863-64. In her report and recommendation, the magistrate judge concluded that the ALJ's decision to deny benefits adequately explained the ALJ's evaluation of the opinion evidence and was supported by substantial evidence.

3

The court agrees with the analysis of the magistrate judge.

Although plaintiff argued below that the ALJ only referred to some of the medical records, the ALJ need not discuss every piece of evidence in the record for her decision to stand, *see Thacker v. Comm'r of Soc. Sec.*, 99 F.App'x 661, 665 (6th Cir. 2004), and the failure to cite specific evidence does not indicate that it was not considered, *see Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). The ALJ may also accomplish the goals of the "good reasons" requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439-41 (6th Cir. 2010). The ALJ's detailed discussion of the record includes references to evidence both supportive and nonsupportive of plaintiff's disability claim, and is not one-sided. The ALJ also thoroughly explained how the medical opinions that plaintiff has marked functional limitations were inconsistent with other evidence.

In her objections, plaintiff relies on the records and opinions of her treating therapists, Physician's Assistant Tracy Detwiler and Therapist Ann Nash, and the opinions of Psychiatrist Linda Griffith, M.D., and plaintiff's family physician, Dr. Kratz. In particular, plaintiff argues that the ALJ failed to adequately address the fact that all of these providers opined that plaintiff would miss five or more days of work per month due to her mental impairments. These opinions were offered by way of checkbox forms which provided little explanation of how these providers concluded that plaintiff's mental impairments would result in her missing five days of work per month. The ALJ was not required to explain

4

every piece of evidence in the record or to address each check mark from the doctor's opinion. *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018). In any event, the ALJ noted these opinions and discussed extensively why she found them to be entitled to little or no weight.

In a form completed on October 1, 2012, Ms. Detwiler expressed the opinion that plaintiff would likely miss five days of work per month. PAGEID 858, 1155-57. On June 11, 2015, Ms. Detwiler completed a similar form which was co-signed by Dr. Griffith. PAGEID 865, 1357-59. The ALJ observed that it was unclear how Dr. Griffith concurred with Ms Detwiler's assessment, as there was no evidence that Dr. Griffith ever saw the plaintiff. PAGEID 865, 877. The ALJ agreed that the moderate limitations indicated by Ms. Detwiler appeared likely, but that the marked or extreme limitations she noted overstated the degree of functional limitation experienced by plaintiff. PAGEID 865. The ALJ referred to Ms. Detwiler's record on which she indicated that plaintiff was "doing very well" in terms of her mental status. PAGEID 875 (citing Exhibit 50F). The ALJ described plaintiff's Consolidated Care treatment records, including plaintiff's treatment with Ms. Detwiler, as showing no intensive treatment. The ALJ stated that from 2013, plaintiff saw Ms. Detwiler periodically for medication oversight, and that the mental status exams were largely normal during these visits. PAGEID 877. The ALJ also discussed the plaintiff's treatment with Ms. Nash, noting specifically her opinion that plaintiff would likely miss five days of work per month. PAGEID 859.

In support of her conclusion that the opinions of Ms. Detwiler and Dr. Griffith were entitled to little weight, the ALJ cited

5

records indicating that: 1) plaintiff displayed normal judgment and insight and appropriate behavior and was doing well after breaking up with her boyfriend; 2) plaintiff participated in group activities and exhibited no behavior problems at "A Friend's House," a residential facility in Indiana where plaintiff lived until she was discharged at her own request; 3) plaintiff led a peer support group in 2014 while attending programs at the "Recovery Zone," a certified peer support center operated by the State of Ohio designed to assist those coping with mental illness and addiction, and drove a van for that organization; 3) in a 2007 report (recognized by the ALJ as being in the remote past), Sudhir Dubey, Psy.D stated that plaintiff had a Global Assessment of Functioning ("GAF") score of 71, that her mental functioning was mildly impaired, and that her ability to relate to others was not impaired; 4) in his 2011 report, Sherwin Kepes, Ph.D., who evaluated plaintiff when she was at A Friend's House, opined that plaintiff's mental status was stable, that her symptoms were mild, and that she socialized with others; 5) in a 2011 report, Joseph Pressner, Ph.D., a state agency consultant, opined that plaintiff would be able to perform unskilled tasks and could have superficial contact with coworkers and supervisors;[1] and 6) while participating in job training at the Bureau of Vocational Rehabilitation, plaintiff exhibited no unusual behaviors, interacted with others, was pleasant to be around, was capable of following instructions,

---

[1] The ALJ also discussed the January 9, 2012, report of Caroline Lewin, Ph.D., a state agency consultant who concluded that plaintiff could perform simple routine tasks that do not require fast pace, strict production quotas, or significant interaction with others. PAGEID 861-63.

6

and demonstrated no difficulty in completing assigned tasks. PAGEID 860-862, 865-866, 875.

In specifically addressing Dr. Kratz's opinion, the ALJ noted that: 1) Dr. Kratz was a family physician, not a specialist in mental health, *see* 20 C.F.R. §416.927(c)(5)(ALJ is entitled to give less weight to the medical opinion of a source who is not a specialist); 2) other expert evidence from psychologists described, for the most part, possible moderate functional limitation as the result of mental impairment; 3) the mental health treatment records (discussed in detail elsewhere in the ALJ's decision) did not document disabling mental impairments; 4) treatment with psychotropic medication and counseling was effective in alleviating plaintiff's symptoms of depression and anxiety; and 5) plaintiff's daily activities, both while in residential therapy facilities and, more recently, in her own apartment, did not demonstrate more than mild limitations in plaintiff's mental functioning capacity.[2] PAGEID 866-68. The ALJ adequately explained why she gave little weight to the expert opinions that plaintiff had marked limitations and would miss five days of work per week, and her decision in that regard is supported by substantial evidence.

The ALJ did not err in concluding that the expert opinions that plaintiff would miss five days of work per month, as well as Dr. Kratz's statement that "it may be that disability is in [the claimant's] future as it seems unlikely she's going to be able to

---

[2]These activities included performing household chores, driving, managing her own financial affairs, attending church and group therapy sessions, doing laundry, shopping, playing computer games, reading, doing art projects, babysitting, watching movies, and socializing with family and friends. PAGEID 867.

7

effectively hold a job," were "speculative at best" and rejected them "as unsubstantiated by objective medical evidence or clinical findings." PAGEID 866, 871.

Plaintiff also argues that the ALJ did not adequately address or take into account her two hospitalizations in 2011, her participation in activities at the Light the Way Christian Counseling Center and the Recovery Zone, and her stay at A Friend's House. This court disagrees. With regard to plaintiff's hospitalization, the ALJ expressly noted that there was evidence of episodes of psychological symptom exacerbation with apparent suicidal ideation in 2011. PAGEID 858. The ALJ further observed that situational factors such as unemployment, homelessness, financial difficulties, and family relationship issues seem to have been at the root of these episodes, and that, on each occasion, plaintiff was effectively treated within a few days and her condition stabilized. PAGEID 858. The ALJ later noted that plaintiff was "quite functional during the relevant past" with the possible exception of two brief episodes of psychological symptom exacerbation in 2011 brought about by situational factors, resulting in two hospitalizations. PAGEID 866. The ALJ observed that plaintiff was not in any mental health treatment at the time of her two psychiatric hospital admissions in 2011, that she followed up with mental health treatment after she was released from the hospital, that the treatment records showed no further evidence of a serious depression, and that her symptoms were helped by medication and therapy. PAGEID 877.

The ALJ discussed the records concerning plaintiff's activities at Light the Way Christian Counseling Center and A Friend's House from 2010-2012, including: 1) the report of Dixie

Gerber, a counselor at A Friend's House, stating that plaintiff enjoyed doing crafts and reading, participated in group activities such as swimming, exercising, walking playing video games, performed assigned chores, and exhibited no behavior problems; and 2) the 2011 report of Dr. Kepes, a psychologist who evaluated plaintiff at A Friend's House, in which he stated that plaintiff was involved in teaching groups, did chores and socialized with residents; he concluded that plaintiff had symptoms of major depression and borderline intellectual functioning in the moderate to near-mild range. PAGEID 859-61, 875-76. The ALJ also summarized the records from Recovery Zone which reported that plaintiff led a peer support group, drove a van, and was much more stable with psychotropic medication. PAGEID 860, 875. The ALJ noted that the records from these facilities indicated that plaintiff engaged in a wide range of activities, including group activities, while associated with those organizations. PAGEID 875. The ALJ also observed that plaintiff's involvement with A Friend's House and Recovery Zone was "largely for support as a homeless individual[.]" PAGEID 877.

The ALJ again discussed the records from the above facilities in concluding that plaintiff has no more than mild limitations in her activities of daily living, *see* PAGEID 867; that she has moderate limitations in her ability to maintain social functioning, *see* PAGEID 867-68; and that she has moderate limitations in her ability to maintain concentration, persistence or pace, *see* PAGEID 868-69. The ALJ adequately considered and addressed the relevant medical records concerning her 2011 hospitalization and her participation in other therapy programs in determining whether

9

plaintiff is disabled.

III. Conclusion

For the reasons stated above, the court concludes that the ALJ gave good reasons, supported by substantial evidence, for the weight she assigned to the mental health opinion evidence. The ALJ's non-disability finding is supported by substantial evidence. The court overrules the plaintiff's objections (Doc. 17), and adopts and affirms the magistrate judge's report and recommendation (Doc. 16). The decision of the Commissioner is affirmed, and this action is dismissed. The clerk is directed to enter final judgment in this case.

Date: August 16, 2019             s/James L. Graham
                                  James L. Graham
                                  United States District Judge